# 25-700

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

--------------------------------

**Wentworth Rattray**,

*Plaintiff-Counter-Claimant-Appellant*,

v.

**Police Officer Jose Cadavid, Badge #9085**, in his individual and official capacity,
**Police Officer Alyssa Trigueno**, in her individual and official capacity,

*Defendants-Counter-Defendants-Appellees*,

Police Officer Sgt. Mervin Bautista, in his individual and official capacity, The City of New York,

*Defendants-Appellees*.

---

BRIEF OF APPELLANT WENTWORTH RATTRAY ON APPEAL
FROM THE DECISION AND FINAL JUDGMENT OF
THE SOUTHERN DISTRICT OF NEW YORK
17-CV-8560

---

## Contact Information

Wentworth Rattray, pro se
1039 Madison Street
Annapolis, MD 21403

(917) 353-9675

# Table of Contents

Contact Information .................................................................................................... 2

Table of Authorities ................................................................................................... 4

Jurisdictional Statement ............................................................................................. 4

Statement of Relevant Facts ....................................................................................... 5

Statement of the Issues .............................................................................................. 6

Statement of the Case .............................................................................................. 14

Summary of the Argument ....................................................................................... 17

Standard of Review .................................................................................................. 24

Conclusion ............................................................................................................... 26

A 1 – Trial filings .................................................................................................... 28

A 2 – Jury instruction .............................................................................................. 29

A 3 – Motion to Compel un-Redaction ..................................................................... 29

A 4 – Denying Extension of Discovery ..................................................................... 30

A 5 – Doc 119 - Discovery Limited .......................................................................... 31

Signature Page ......................................................................................................... 32

## Table of Authorities

1. *Johnson v. Abdullah, 2021-Ohio-3304*
2. *Bilida v. McCleod, 211 F.3d 166 (1st Cir. 2000)*
3. *Terry v. Ohio (1968)*
4. *Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 381 (S.D.N.Y. 2013)*
5. **Pierce v. Underwood, 487 U.S. 552, 558 (1988)**
6. *R.T. v. Knobeloch*, 2018-Ohio-1596, ¶ 13 (10th Dist.)
7. *Missouri v. McNeely, 569 U.S. 141, 151–52 (2013)*
8. *Kentucky v. King, 563 U.S. 452, 462 (2011); id. at 470*
9. *Fisher, 558 U.S. at 47*

## Jurisdictional Statement

This brief is filed on behalf of Appellant Wentworth Rattray seeking a de novo review and a writ of coram vobis due to error of law and error of fact <u>Pierce v. Underwood, 487 U.S. 552, 558</u> (1988). Plaintiff Wentworth Rattray brought an action in United States District Court Southern District of New York against Defendants City of New York, Police Officer Jose Cadavid and Alyssa Trigueno alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 arising from an incident that occurred in his home on November 5, 2016.

Trial proceeded on 8/29/2023 and the order was entered on 09/05/2023 by Hon. Paul G. Gardephe. A motion for new trial was denied by the trial court on 02/24/2025. Mr. Rattray properly filed the Notice of Appeal on 3/25/2025 within 30-days of the trial court's judgement.

The UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT has jurisdiction over appeals from cases tried in the United States District Court Southern District of New York.

## Statement of Relevant Facts

1. On November 5th 2016 Mr. Wentworth Rattray was alone at his residence in apartment 3C at 42 West 120th Street, NY, NY.

2. Out-of-state, non-custodial parent of the subject-child arrives at 42 W 120th St and placed a 911 call asserting that it is "her time to pick-up [her daughter]".

3. Officers Jose Cadavid and Alyssa Trigueno are dispatched to assist with a '*custodial dispute*'.

4. Officers arrive at Mr. Rattray's home and demand that Mr. Rattray, the custodial parent, produce the child. Mr. Rattray is unable to produce the child as the child was not at home.

5. Officer Cadavid insists on seeing the child, forces his way in, and upon searching the home, over Mr. Rattray's objection, Cadavid comes to understand that the child is not at home. After searching the home Cadavid continues to detain Mr. Rattray in the home over an hour until his supervisor, Lt Kosh, arrives at the home.

6. The supervisor reviews the details of the situation and instructs the officers to depart.

7. Mr. Rattray files a complaint with NYPD's Internal Affairs Bureau and in the Southern District of New York Wentworth Rattray v. The City of New York, Jose Cadavid, et al [17-CV-8560 (PGG)].

8. The case proceeds to trial where:

   a. At trial, Cadavid raises new allegations of new undisclosed witnesses, another unit, that was dispatched to verify the well-being of the child.

   b. Cadavid also repeats allegations he first made in his deposition, that the mother told him of her concern for the child's safety and

that Mr. Rattray used drugs and had drug-dealers visiting the home. The mother denies making any such statements. Cadavid articulates no exigency or anything else that overcomes the warrant requirement to conduct a search of the home.

c. At trial, the non-custodial mother refutes Cadavid's allegations repeating that she made no statements to Cadavid alleging danger to the child or of alleged drug-use by Mr. Rattray or drug-dealers in the home.

9. a Verdict and subsequent Order was issued by the trail court 09/05/2023.

10. A motion for a new trail was filed by Mr. Rattray and it was denied by the lower court 02/24/2025.

## Statement of the Issues

1. **SUPPRESSION OF EVIDENCE IN THE LOWER-COURT.**

   a. Defense failed to disclose material witnesses as required under FRCP Rule 26.(a)(1)(A):

      i. The existence or identity of the officers that were sent to check on the child as testified to by Cadavid and cited in the court's denial of Mr. Rattray's retrial request was not disclosed to Mr. Rattray.

   b. In a ruling Magistrate Judge Parker disallowed Mr. Rattray's interrogatory request made as plaintiff under FRCP Rules, to receive 'all' communications about himself, the subject-child, and the subject child's mother (**Doc 119** ' Plaintiff is directed not to pose any

additional interrogatories without leave of Court and Defendant is excused from answering the interrogatories').

c. The magistrate ruled that:

   i. Plaintiff's numerous discovery request exceeded the needs of the case and further ruled that

   ii. for Plaintiff to make further discovery requests he had to secure the prior clearance of the court and be specific in his requests. However, with limited access to the information that the state has accumulated it is nearly impossible to know what the state has in its possession related to the case in order for a plaintiff to make narrow. Specific requests. (Doc 119 ' Plaintiff is directed not to pose any additional interrogatories without leave of Court and Defendant is excused from answering the interrogatories')

**2. THE EXISTENCE OF ADDITIONAL NEW FACT WITNESSES WERE FIRST DISCLOSED AT TRIAL.**

a. Cadavid spontaneously, testified that other officers were dispatched and those officers traveled to the location of, and establish the wellbeing of, the subject child.

   i. No information on the existence of these officers was provided to plaintiff prior to courtroom testimony during the trial as required under FRCP Rule 26.(a)(1)(A).

   ii. Plaintiff was denied the opportunity to depose the still-unnamed individual officers, elicit their testimony in depositions, review their statements, or conduct an examination of their testimony at trial as required under FRCP Rule 26.(a)(1)(A).

iii.  That testimony is hearsay and should not be allowed without plaintiff having the opportunity to depose.

iv.  This was not harmless, as the introduction of this testimony served to bolster the appearance-of-reasonableness of Cadavid's actions and bolstered Cadavid's credibility as a witness. This unchallenged testimony could have influenced reasonable jurors into giving more weight to Cadavid's testimony than they otherwise would. This broader team of unnamed investigators paints Cadavid as part of a larger action to secure a child, as opposed to plaintiff's testimony and recollection that the supervisor arrived at the home, listened to plaintiff's explanation, reviewed the available emails and quickly directed Cadavid to leave the home. This shorter supervisory investigation would tend to indicate to a reasonable juror that there was no basis for action on NYPD's part. Defendant's failure to disclose the members of the alleged broader investigative team

**3.  IN THE COURT'S DENIAL OF PLAINTIFF'S REQUEST FOR A NEW TRIAL (DKT. 290) THE COURT ERRONEOUSLY CREDITS THE EXISTENCE OF EVIDENCE THAT WAS NOT IN THE RECORD (Dkt. 300).**

a.  Officer Cadavid in his deposition only alleges that he needed his supervisor to help him complete his investigation. At his deposition, Cadavid alleges only that his supervisor was able to ascertain the safety of the child but makes no mention of other officers, nor that those officers visited the child, or how Cadavid came to that conclusion about the supervisor's conclusion.

i.  Here the court erred in crediting that this information was presented in Cadavid's deposition (Dkt**. 300**). Cadavid testified that both he and the supervisor came to the conclusion that the child was safe based on a call to some location and some unknown officers visiting the child.  The safety of the child is not something that Cadavid could testify to as he was not at the location, and based his conclusion only on the half of the phone-call he alleged that he heard and what the supervisor told him.

**Trial** *Transcript – Testimony (Dkt. 296 Pg 23)*

"

Q. Officer Cadavid, I'm just going to reask the last question. Did you have an understanding of what the next steps Lieutenant

Khosh continued to take were?

A. Yes.

Q. Could you describe what he relayed to you?

A. The next step was to send a police car over to the location where their daughter was, and to physically confirm that she was there and she was okay.

Q. All right. After that happened, what did you do?

A. After that happened, we were satisfied that the daughter was okay, we left.

Q. When you say "we," who are you referring to?

A. I'm sorry. My partner and Lieutenant Khosh.

"

As compared to his deposition:

*Cadavid's **Deposition** Pg 115*

"

> **8 Q Okay. So the "Suspect Child Abuse" box**
> **9 here is "No."**
> **10 We can all see that. Between the time**
> **11 when you suspected child abuse and when you no**
> **12 longer suspected child abuse, what happened to**
> **13 change your mind?**
> **14 A** My supervisor responded, and together with
> **15** my supervisor, we were able to conclude the
> **16** investigation.
> "

    b.  The names of these additional investigating officers were not provided as required during discovery.

    c.  The court alludes to text messages being sent to Mr. Rattray. No such text messages are in Mr. Rattray's or the court's records or testimony. Mr. Rattray received no texts from the child's mother. There was only testimony that the mother attempted to reach the child directly (as date and times were already set by court order from the Family Court) and received no response.

    d.  Even assuming all these extra-evidentiary embellishments are true the legality of the search is still a matter for a judge to decide, not a jury, and the allegations made by Cadavid do not present an imminent threat.

**4. IN THE COURT'S DENIAL OF PLAINTIFF'S REQUEST FOR A NEW TRIAL THE COURT DOES NOT ADDRESS THE MOTION'S ASSERTION THAT THE LEGALITY OF THE SEARCH IS A MATTER OF LAW FOR THE COURT, NOT THE JURY (Dkt. 300).**

**5. IN THE COURT'S DENIAL OF PLAINTIFF'S REQUEST FOR A NEW TRIAL THE COURT MISSTATES MR. RATTRAY'S OBJECTION TO THE WITNESSES NEWLY DISCLOSED WITNESSES (Dkt. 300 PG. 2).**

a. Mr. Rattray does not contend that Cadavid's statements regarding the presence of the responding supervisor, Lt. Kosh is new as indicated in the trial court's response (Dkt. 300 Pg. 2). Instead, Rattray complains that Officer Cadavid's trial testimony newly discloses witnesses that were not disclosed during discovery (i.e., the officers who presumable went to check on the welfare of the minor child). Mr. Rattray stated in his supplement (Dkt. 280) that there was no such call made from his home and that he is not aware of any officers making contact with his minor child on the evening on November 5th, 2016. The disclosure of these key witnesses at trial presented undue surprise. The court's misstatement of Mr. Rattray's position in indicates an abuse of discretion or reversible error.

b. The trial court credits Cadavid with having disclosed the witnesses during his deposition. However, the record shows that Cadavid merely mentions what he wanted to do, not what actually happened.

*Cadavid's Deposition Pg 27*
"
5 **Q So at this point, you have no doubt the**
6 **child is not in the apartment or you're certain the**
7 **child is not in the apartment. What did you do**
8 **then?**
9 A I requested for the supervisor.
10 **Q Okay. So at that point, you requested a**
11 **supervisor.**
12 **Why did you need a supervisor at this**
13 **point?**
14 A I needed a supervisor to do -- to help me

15 in the investigation to find out the whereabouts of
16 your daughter.
**17 Q Okay. Would you say you needed a warrant?**
18 A No.
"

*Cadavid's Deposition Pg 82*
"

**Q Why was a child maltreatment report not
11 completed?**
12 A Based on my supervisor's investigation and
13 my investigation, we concluded that the little girl
14 was safe.
"


*Cadavid's Deposition Pg 115*
"

**8 Q Okay. So the "Suspect Child Abuse" box
9 here is "No."
10 We can all see that. Between the time
11 when you suspected child abuse and when you no
12 longer suspected child abuse, what happened to
13 change your mind?**
14 A My supervisor responded, and together with
15 my supervisor, we were able to conclude the
16 investigation.
"


6. **EVEN IF OFFICER CADAVID ALLEGES THAT HIS UNWARRANTED SEARCH WAS PERMITTED UNDER LAW UNDER SOME EXCEPTION,** (e.g., Community Caretaking), the burden of proof then shifts to Cadavid/the state to prove the alleged exception to the warrant requirement as law enforcement typically bears the heavy burden to justify warrantless searches, ensuring that such actions are strictly necessary and appropriately limited.

a. That shift of the burden of proof was not clearly presented to the jury in their instructions, but was alluded to only as "While Officer Cadavid must **produce** **evidence** supporting the existence of exigent circumstances, the ultimate burden of proof is on Mr. Rattray to prove that Officer Cadavid's entry and search violated his Fourth Amendment right to be free from unreasonable searches." (Dkt. [277](#) pg. 16) see also *R.T. v. Knobeloch*, 2018-Ohio-1596, 13 (10th Dist.). Merely mentioning that officer Cadavid must 'produce evidence' does not accurately convey the requirement that the state must meet the burden

The Second Circuit has held that the burden of proof for establishing exigent circumstances during a warrantless search lies with law enforcement. They must demonstrate that the situation presented a compelling need for immediate action and that there was no time to secure a warrant. Even if this were a matter for a jury, the jury instructions were insufficient to convey this shift.

b. It is clearly established that unwarranted searches of the home are unlawful. Any exceptions requires the state or the one acting under color of law to provide evidence to meet its burden.

c. Based on the uncontested facts in the instant case, the legality of Cadavid's unwarranted search remains a matter of law for the court, not for the jury.

d. No exceptions to the warrant requirements were articulated, explicitly claimed, alleged, or stated by defendants and no evidence presented supports any exception.

e. A police officer's badge alone does not authorize Mr. Rattray's arrest and prolonged detention in the home without a duly issued warrant for purposes of investigative interrogation by the police or prosecutors.

    i. Defendants' emergency aid and community caretaking exception to the warrant requirement fails as:

        1. No real or imagined exigence or emergency was alleged or articulated in trial testimony or documented evidence from the evening of November 5th 2016.

        2. No evidence-of any emergency was alleged or articulated. Officer Cadavid's feelings of concern are insufficient to overcome the clearly-established warrant requirement.

        3. No threat, real or perceived, was articulated in Officer Cadavid's testimony or in the documentation created that evening.

    ii. Even if the mother did tell of drug-use and drug use, as Cadavid alleged in his testimony, that could be the basis for a warrant but does not rise to the level of imminent danger requiring immediate action by the police officer Jose Cadavid.

## Statement of the Case

Plaintiff Wentworth Rattray brought an action in United States District Court Southern District of New York against Defendants City of New York, Police Officer Jose Cadavid and Alyssa Trigueno alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 arising from a November 5th, 2016 unwarranted

search of Mr. Rattray's home by PO Jose Cadavid and the failure of PO Allyssa Trigueno to intervene and the subsequent hour-long seizure.

At the time Mr. Rattray was the custodial parent of a minor child who lived in the same home but was away visiting friends. The mother arrived outside Mr. Rattray's home to pick up her daughter for an unscheduled visit. Mr. Rattray told the mother that the child was not home and that she should follow Family Court judge's order concerning custody and scheduling visitation. Plaintiff then returned to his apartment.

The mother called 911. Responding officers Cadavid and Trigueno set out to get the child for the mother.

At approximately 7:00 p.m. — a few minutes later — Officers **Cadavid** and Trigueno knocked on Mr. Rattray's door, announced themselves as police officers, and asked to speak to Mr. Rattray. Mr. Rattray asked why the officers were there, and one officer stated that the child's mother was downstairs to pick up her child. Officer **Cadavid** then asked Plaintiff to open the door so that they could talk. Since he was writing an email to inform the Family Court that the child's mother was attempting an unscheduled visitation, Mr. Rattray initially refused to open the door, stating that he could hear the officers clearly through the door.

Officer **Cadavid** replied that he was not going to speak through the door, and asked if Plaintiff wanted the officers to "take down the door." Mr. Rattray completed the email and then opened the door, stood in the doorway, and explained to the officers that the mother was either "mistaken, or . . . creating conflict to help her case."

The Officer Cadavid asked to see the child, and Mr. Rattray explained that "the child was not home and would not be made available to speak to them." Officer

Cadavid also asked if he could come in and look around, and Mr. Rattray refused. Officer Trigueno implied that, if Mr. Rattray did not have documentation indicating that the child should be with him, then Mr. Rattray would be going to jail. Mr. Rattray responded by asking whether the officers had documents indicating that the child should be with someone else. Mr. Rattray asked to speak to an NYPD supervisor, and moved to end the conversation by closing the door until the supervisor arrived. Officer **Cadavid** used his foot to block the closing door, however, and pushed it open, forcing his way into the apartment.

Officer **Cadavid** then searched Plaintiff's apartment, walking through the kitchen, the bathroom, the living room, Plaintiff's daughter's room, and Plaintiff's room. Officer **Cadavid** also demanded that Mr. Rattray present his identification, which Mr. Rattray did. Officer **Cadavid** kept Mr. Rattray in the apartment. Mr. Rattray repeatedly asked Officer **Cadavid** to leave, and "reiterated that the minor child was not home, that she was where she needed to be, and that she was safe." Officer **Cadavid** refused to leave or to return Mr. Rattray's identification, which caused Mr. Rattray to become even more concerned for his own safety. Accordingly, Mr. Rattray called 911 to report that there was an officer searching his apartment against his wishes who refuses to leave. Mr. Rattray also asked that an NYPD supervisor be sent to the scene, and the 911 operator offered to send assistance via a supervisor or internal affairs.

Trial proceeded on 8/29/2023. The jury was tasked with determining if Officer Cadavid violated Mr. Rattray's 4th Amendment rights, and if yes, what damages were suffered (Dkt. 277 ).

The jury found that there was no violation of the 4th Amendment and as such did not need to address the other questions. Mr. Rattray filed to inform the court of

new uncorroborated statements introduced at trial (Dkt. 280). The court's order was entered on 09/05/2023 (Dkt. 281). A motion for new trial was denied by the trial court on 02/24/2025.

Mr. Rattray properly filed the Notice of Appeal on 3/25/2025 within 30-days of the trial court's judgement and seeks reversal on appeal of the trial court's denial of Plaintiff's motion for a new trial as allowed under FRCP Rule 50.(e).

## Summary of the Argument

The law is clearly established that a warrantless arrest inside the home violates the 4th Amendment. The warrant requirement provides supreme protection to a person in their home. That protection prevails even in the face of some unspecified potential harm as was present in Caniglia. Caniglia v. Strom, C.A. No. 15-525, 2019 WL 2358965 and as alluded to by Cadavid.

In rendering emergency assistance, the officer must have an objectively reasonable basis for believing that an individual within the home is in need of immediate assistance *Fisher*, 558 U.S. at 47 and the government or officers should not have created the exigency. The Court reasoned that [t]hese are never very convincing reasons and, in these circumstances, certainly are not enough to by-pass the constitutional requirement. And similar to the instant case, the search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction. Defendants provided no clear and convincing evidence of any danger or other exigence. Here the finding of law was improperly presented to jury deliberations.

The Second Circuit has held that the burden of proof for establishing exigent circumstances during a warrantless search lies with law enforcement. They must demonstrate that the situation presented a compelling need for immediate action and that there was no time to secure a warrant. Even if this were a matter for a jury, the jury instructions were insufficient to convey this shift of the burden and officers provided no clear and convincing evidence of exigence.

Furthermore, it is clear that police may not continue to detain a person once they become aware of their error. No reasonable trained officer could have believed that it was lawful to continue to detain Mr. Rattray after searching the home and finding no evidence of the drugs or drug dealers as alleged, nor of foul play as alluded to by Cadavid in his trial testimony. No reasonable officer could believe it was lawful to continue to detain Mr. Rattray in his home after conducting their search and finding no child, no imminent danger, and no contraband.

*Trial Transcript – Testimony (Dkt.* 296 *Pg 13-14)*
"

Q. Did you look in any closets?

A. Yes, I did.

Q. Okay. Did you look in the kitchen cabinets?

A. No.

Q. Why not?

A. I was looking in general areas where the body of a girl could fit.

Q. And did you find the plaintiff's daughter?

A. No, I did not.
"

*Trial Transcript – Testimony (Dkt. 296 Pg 14-15)*

"

Q. And at some point did you or your partner request a supervisor to the scene?

A. Yes.

Q. Why?

A. Because I still need to know where his daughter was. Since I was trying to investigate her whereabouts, Mr. Rattray was refusing to answer my questions, I needed my supervisor's assistance, and Mr. Rattray also requested a full supervisor.

Q. When you say you were investigating her whereabouts, do you have concerns for her physical well being at this point?

A. Yes.

Q. Why?

A. Because, based on the allegations of the mother, based on how Mr. Rattray was acting, his demeanor, and his refusal to answer my questions of where she was, her whereabouts, I was more concerned about her well being and her safety.

Q. At some point did a supervisor come to Mr. Rattray's apartment?

A. Yes.

"

*Trial Transcript – Testimony (Dkt. 296 Pg 17)*

"

Q. Why did you remain in the apartment?

A. Because we were waiting for the supervisor, and there was an ongoing investigation.

Q. When you say there was an ongoing investigation, what do you mean?

A. I was still -- I was investigating the whereabouts of his daughter.

Q. And you said you were by the door. Where is the plaintiff?

A. He's -- so there's a kitchen counter that runs approximately three to four feet in front of me. So he's sitting at the edge of the kitchen counter.

"

*Trial Transcript – Testimony (Dkt. 296 Pg 18)*

"

Q. I'm sorry. What was the last thing you said?

A. At that point, I don't know whether there's a crime committed against -- in regards to his daughter.

Q. You don't know if there was a crime committed against his daughter?

A. Yes.

Q. Did you suspect there was a crime committed against his daughter?

A. At that point, yes, I was suspecting.

Q. And what was that suspicion based on?

A. That suspicion was based on the mother's allegations,

Mr. Rattray's demeanor, his actions, and also his refusal to

answer my questions, to tell me her whereabouts, where she was,

and the fact that he tried closing the door on us.

"

At trial Mr. Rattray asserted that defendants, Cadavid and Trigueno, violated his Fourth Amendment rights when they (1) entered his apartment "without a valid search warrant and without probable cause or legal justification"; and (2) "unlawfully, and unreasonably searched [his] residence without a warrant, and without consent, and (3) unreasonably detained him in his home for over an hour." (SAC (Dkt. No. 42) at 112, 114-15)  42 U.S.C. § 1983;  and Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 381 (S.D.N.Y. 2013).

*Trial Transcript – Testimony (Dkt.* 296 *Pg 18)*

"

Q. Okay. Did you have grounds to arrest him?

A. Yes.

Q. And for what?

A. When I was asking Mr. Rattray for information in regard to

his daughter, he was refusing, and the fact that he tried

closing the door on us, I -- I had grounds of OGA, which is

obstructing governmental administration, in regard to my

investigation.

"

Defendants' testimony did not dispute that Cadavid entered Mr. Rattray's residence without a warrant, detained, and questioned him. (Def. Br (Dkt. No. 57) at 19 (Dkt. No. 285, 283, and 287) Defendant's argue, however, that there was no Fourth Amendment violation because the search was conducted pursuant to the emergency aid and community caretaking exceptions to the warrant requirement since Cadavid was concerned for the child's well being. Cadavid makes no notes or entries to record any exigence, and the domestic incident report shows no allegation of danger or exigence [Appendix 17 CV 8560 PGG 2023 DM Plain  DiR P1 DOMESTIC INCIDENT REPORT.pdf ]

However, as a matter of law, the community caretaking exception to the warrant requirement does not extend to the home (Caniglia v. Strom, 593 U.S.) Additionally, "Any warrantless entry based on exigent circumstances must, of course, be supported by a genuine exigency."  see Kentucky v. King, 563 U.S. 452, 462 (2011); id. at 470.  Here, defendants allege nothing that rises to the level of perceived or actual exigence,


*Trial Transcript – Testimony (Dkt. 296 Pg 18)*

"

Q. Did you suspect there was a crime committed against his daughter?

A. At that point, yes, I was suspecting.

Q. And what was that suspicion based on?

A. That suspicion was based on the mother's allegations, Mr. Rattray's demeanor, his actions, and also his refusal to answer my questions, to tell me her whereabouts, where she was,

and the fact that he tried closing the door on us.

"

The instructions to the jury required the jury to determine a matter of law where the facts of Cadavid's entry was not in dispute nor was the fact that there was no emergent or exigent circumstance.  Requiring the jury to determine if [there a violation of Mr. Rattray's Fourth Amendment right under the Constitution by Cadavid's unwarranted search of Mr. Rattray's home] was an abuse of discretion. Even in a jury trial, matters of law are not fit for juries to settle.  Matters of law are for the judge, for the court, to settle.

Passing these matters of law to a jury to reach a verdict was a clear error in the lower court.  Furthermore, the court limiting Mr. Rattray's discovery requests and defendants' failure to disclose fact witnesses during discovery as required under Rule 26.(a)(1)(A) prevented the consideration of "all of the facts and circumstances of the case." Missouri v. McNeely, 569 U.S. 141, 151–52 (2013)

A 4th Amendment claim, is to be considered in the totality of the facts.  "all of the facts and circumstances of the case." Missouri v. McNeely, 569 U.S. 141, 151–52 (2013)  but by the court limiting Mr. Rattray's reasonable discovery requests for all communications the court erred and provided windows where new facts were inserted. That error prevented Mr. Rattray from being aware of the existence of material aspects of the case and prevented the pursuit of testimony of the new key fact witnesses Cadavid testified to at trial.

Prior Courts, in rejecting government's claims (e.g., that a search was conducted because of the opium smell in a room), held that the government offered no reason for not obtaining a search warrant prior to a search except the inconvenience to the officers and some slight delay necessary to prepare papers

and present the evidence to a magistrate. Kentucky v. King, 563 U.S. 452, 462 (2011); *id.* at 15 where the court reasoned that smell in a home was not enough to bypass the warrant requirement. In the current case, Cadavid says he became concerned for he child's well being and conducted his search based on that feeling.

In its ruling denying the Rule 50 motion for a new trial the trial court uses its discretion to give ample weight and credibility to Cadavid's testimony even where it is contradicted by evidence in the record and by third-party-witness testimony. Despite evidence in Cadavid's disciplinary record to indicate that he is prone to making false statements, the court fails to take notice that the contemporaneous written records from the night in question, 5 November 2016, has no mention of drugs, drug-dealers, or danger to child. Despite Cadavid's de-novo allegations of danger only arising at his deposition years after the incident, and mere months after he lost his sister in an incident that High Point, NC police reported, Cadavid concocts in his deposition testimony a version of events that reads quite similar to the events in High Point, NC adding new undocumented details as his concerns based on what he had heard from the mother years before. Despite Cadavid's partner, Officer Trigueno, testifying that she heard no allegation of drugs, drug-dealers, or danger to the child from the mother and the refutation of those allegations by the alleged originator of the allegations, the court credit's Cadavid's testimony as credible. This level of one-sided analysis in the court's denial of Plaintiff's motion for a new trial rise to the level of <u>abuse of discretion</u> and should be considered as part of this request for de novo review.

## Standard of Review

The *<u>standard of review</u>* for this appeal is a *<u>mixed basis</u>* as there is the substantial issue where a matter of law was submitted to the jury.

Questions of law are reviewable de novo.  <u>Pierce v. Underwood, 487 U.S. 552, 558 (1988)</u> Trial courts do not have discretion to apply the law incorrectly or make errors of law. <u>Johnson v. Abdullah, 2021-Ohio-3304</u>

Factual errors presented in the court's characterization of the details of the case in its rulings also require application of the clearly *erroneous standard* of review.

Where the shifting of the burden of proof required to justify an exception under the warrant requirement was not sufficiently articulated in the jury instructions the applicable standard of review is *de novo*.

Where the court discounts the child's mother's eye-witness testimony on her statements to Cadavid and credits Cadavid's statements as more credible despite evidence in the courts records, See Cadavid's disciplinary record, of Cadavid's prior charges of making false statements being charged 30days of vacation, and still testifying that he didn't believe those charges to be true but still signed the paperwork.  The applicable standard of review is *abuse of discretion.*

Where several factual issues that the trial court credits as fact where no evidence was presented or where no such allegation was made in the record (e.g., no evidence of texts from the mother made to Mr. Rattray on the day of the incident referred to in the courts denial Dkt. 300 of plaintiff's motion for a new trial Dkt. 290) the applicable standard is *de novo*.

Where the magistrate limited discovery declaring the request for 'all communications' as beyond the needs of the case the applicable standard of review is *abuse of discretion*.

## Conclusion

Appellant seeks a de novo review and remand the case and further asks that the appellate court:

1. Instruct the trial court on the trial court's jurisdiction on matters of law (Dkt. 277).

   a. That the burden of proof borne by the defendants be included in any jury instruction. (Dkt. 277)

   b. That matters of law are to be decided by the court, not the jury.

   c. That in light of the absence of contention as to if there was a search, or if that search was warrantless, and if Mr. Rattray was detained for over an hour pursuant to that search, the burden of proof for exigent circumstances shifts to the state/officers (i.e., Mr. Rattray does not bear the burden of proving there was no exigence particularly since no exigence was demonstrated or alleged.)

2. the case be remanded to the district court and the request for a new trial be granted;

   a. and that the court compel defendants to:

      i. produce the identity of the unit/officers whom Cadavid alleged in his trial testimony to have visited the minor child on November 5th 2016 as required under FRCP Rule 26.(a)(1)(A). This would afford appellant the opportunity to depose those officers, review their records of their any alleged interaction with appellant's minor child.

      ii. produce all records of the incident that involve or pertain to Mr. Rattray or the minor child on November 5th 2016 (e.g., phone logs, dispatch logs, logbook entries, aided reports), including

with the officers who were alleged to have visited the minor child and any reports or communications produced to document their findings.

## A 1 – Trial filings

| | | |
|---|---|---|
| 02/24/2025 | 300 | MEMORANDUM OPINION & ORDER re: 290 MOTION for New Trial . filed by Wentworth Rattray. For the reasons stated above, Plaintiff's motion for a new trial (Dkt. No. 290) is denied. The Clerk of Court is directed to terminate the motion and to close this case. (Signed by Judge Paul G. Gardephe on 2/24/2025) (rro) (Entered: 02/25/2025) |
| 11/16/2023 | 296 | TRANSCRIPT of Proceedings re: Jury Trial held on 8/31/2023 before Judge Paul G. Gardephe. Court Reporter/Transcriber: Khristine Sellin, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/7/2023. Redacted Transcript Deadline set for 12/18/2023. Release of Transcript Restriction set for 2/14/2024..(Moya, Goretti) (Entered: 11/16/2023) |
| 09/25/2023 | 290 | MOTION for New Trial . Document filed by Wentworth Rattray..(Benoit, Angela) (Entered: 09/25/2023) |
| 09/06/2023 | 282 | LETTER addressed to Judge Paul G. Gardephe from Melissa S. Geller dated 09/06/2023 re: Post-Trial Briefing Schedule. Document filed by Wentworth Rattray. (Wang, Yudi) (Entered: 09/06/2023) |
| 09/05/2023 | 281 | JUDGMENT: It is hereby ORDERED, ADJUDGED AND DECREED: That after a Jury Trial before the Honorable Paul G. Gardephe, United States District Judge, the jury having returned a verdict in favor of Defendants, the Complaint is hereby dismissed. (Signed by Judge Paul G. Gardephe on 9/5/2023) (ate) (Entered: 09/05/2023) |
| 09/01/2023 | 280 | DECLARATION OF WENTWORTH RATTRAY(Supplement). Document filed by Wentworth Rattray. (sc) (Entered: 09/05/2023) |
| 08/31/2023 | 277 | Jury Instructions. Members of the jury, that concludes my instructions to you. I will ask you to remain seated for a moment while I confer with the attorneys to see if there are any additional instructions that they would like me to give. The Marshal will now be sworn. Members of the jury, you may now begin your deliberations. (yv) (Entered: 09/01/2023) |

## A 2 – Jury instruction

| | | |
|---|---|---|
| 08/31/2023 | 277 | Jury Instructions. Members of the jury, that concludes my instructions to you. I will ask you to remain seated for a moment while I confer with the attorneys to see if there are any additional instructions that they would like me to give. The Marshal will now be sworn. Members of the jury, you may now begin your deliberations. (yv) (Entered: 09/01/2023) |

## A 3 – Motion to Compel un-Redaction

| | | |
|---|---|---|
| 06/21/2021 | 146 | FIRST MOTION to Compel Defendants and Defendant's Employer (The City Of New York and the NYPD) to Unredacted copy of all disciplinary reports and investigation/arrest report for Cadavid as a result of his off-duty hit-and-run incident; compelling the City of New York to forensically retrieve and produce the 911 recordings; Subpoena for Deposition of key NYPD personnel *Allow Zoom Depositions and Plaintiff's.*, FIRST MOTION for Extension of Time to Complete Discovery *until August 5th 2021 pending Defendant's providing documents and agreeing to scheduling depositions.* Document filed by Wentworth Rattray..(Rattray, Wentworth) (Entered: 06/21/2021) |

## A 4 – Denying Extension of Discovery

| 10/20/2021 | 176 | ORDER denying 170 Motion for Reconsideration ; denying 174 Motion for Extension of Time to Complete Discovery; denying 175 Motion for Protective Order. The Court denies these motions. The Federal Rules of Civil Procedure give District Courts broad discretion to manage discovery. In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 69 (2d Cir. 2003). The Court has discretion to limit the frequency and extent of use of discovery methods, including depositions, if the discovery is unreasonably cumulative or duplicative, if the party seeking discovery already has had ample opportunity to obtain the information sought, or if the burden or expense of the discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2), as further set forth in this Order. As noted in the previous Order, the parties were directed to submit a status report to this Court advising it of the mutually agreed-upon deposition date. The Court understands that the parties are still attempting to land on a date on or before October 28, 2021 and trusts they will work cooperatively and promptly to finalize a date and time. Because the deposition is limited to one hour, the parties and witness should be able to find a time by then. Accordingly, the Court excuses the parties from submitting a letter regarding the time and date of the deposition; however, the parties should submit a letter by October 31, 2021 confirming that the deposition has been completed. The Clerk of the Court is directed to terminate ECF Nos. 170, 174, and 175. SO ORDERED.. (Signed by Magistrate Judge Katharine H. Parker on 10/20/2021) (vfr) (Entered: 10/20/2021) |
|---|---|---|

## A 5 – Doc 119 - Discovery Limited

| 01/07/2021 | 119 | ORDER. Defendants have raised objections to certain discovery served by Plaintiff in this case. At today's conference, this Court held that Defendants would not be required to produce documents pertaining to dismissed claims, documents pertaining to Defendants' medical and mental health and drug and alcohol use, and documents pertaining to Defendants' family. The Court also narrowed many of the document requests in ECF 115-2, and the Court refers the parties to the transcript of the conference for the court's decision on these requests. With respect to requests 74, 75, 76, 81, 82, 86, 87, Defendants need not respond insofar as they do not seek relevant information and are disproportionate to the needs of the case. To the extent Plaintiff has served contention interrogatories, they are improper at this time and Defendants need not respond to the extent they do not comply with the Local Rules. Additionally, many of the questions in ECF 115-1 can be posed to Defendants in their depositions, which is a more efficient way of obtaining the information. Therefore, Plaintiff is directed not to pose any additional interrogatories without leave of Court and Defendant is excused from answering the interrogatories. Defendants are directed to respond to Plaintiff's requests to admit in accordance with the FRCP. (HEREBY ORDERED by Magistrate Judge Katharine H. Parker) (Text Only Order) Copies of Notice of Electronic Filing To Be Mailed By Clerks Office. (Parker, Katharine) (Entered: 01/07/2021) |
|---|---|---|

## Signature Page

For the forgoing reasons, appellant plaintiff respectfully requests that the lower court's Order entered on 02/24/2025 Dkt. 300 and on 09/05/2023 Dkt. 281 be reversed and vacated, and direct the discovery requests, a new trial, and that the Court grant such additional relief as the Court deems just and proper.

Dated: Annapolis, Md

September 12, 2025

Respectfully submitted,

/s/ *Wentworth Rattray*

Wentworth Rattray, pro se
1039 Madison Street
Annapolis, MD 21403

(917) 353-9675